# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JONATHAN EDWARD MEIER,<br><br>    Defendant. | No. 16-CR-3013-LTS<br><br>**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS** |

_____

    Before me is defendant's motion to suppress evidence allegedly seized in violation of the Fourth Amendment to the United States Constitution. Doc. 19. The grand jury charged defendant in a one-count indictment with possession of firearms as a felon. Doc. 1. The charge arose from an incident on February 12, 2016, when Fort Dodge police officers encountered defendant while responding to a 911 call reporting a man with a gun outside a trailer home. As a result of attempting to conduct a pat down search of defendant, officers discovered one gun on defendant and another in the truck he was driving. In his motion to suppress, defendant alleges that the officers' detention of him was unlawful and the officers lacked reasonable suspicion to justify a pat down search. Defendant argues, therefore, that the Court should suppress evidence of the firearms and other items discovered as a result of the allegedly unlawful detention and search.

    The Honorable Leonard T. Strand, United States District Court Judge, referred this motion to me for a report and recommendation. For the reasons that follow, I respectfully recommend that the Court deny defendant's motion to suppress.

## I.     FINDINGS OF FACT

On October 19, 2016, I held an evidentiary hearing on defendant's motion. I admitted into evidence defendant's exhibits A through D, which consisted of a video recording from a patrol car (Exhibit A), two 911 audio recordings (Exhibit B), police reports (Exhibits C-1, C-2, & C-3), and the depositions of Officer J. Lukawski and Matthew Burns (Exhibits D-1 and D-2). (Except for recordings, exhibits previously filed at Doc. 19). The government called officers Lukawski and Burns as witnesses at the hearing. I make the following findings of fact based on this evidence.

In the late evening of February 14, 2016, Madisen Ebner called 911 asking for an officer to come to her home in a Fort Dodge, Iowa, trailer park. She alleged that a man named Jim was harassing her. She said he was leaving the trailer park on foot and that Jim drove a maroon minivan or SUV. Exhibit A-1. Officer J. Lukawski responded, arriving at the trailer park at approximately 9:15 p.m. Officer Lukawski spoke with Ebner, who further informed him that a woman named Sweeny was with Jim. Ebner showed images of the two captured on her home security camera. Ebner asked Officer Lukawski to contact Jim and Sweeny and ask them not to come to her home anymore.

Officer Lukawski left in his patrol car, stopping a short distance away (still in the trailer park), in order to use his computer in an attempt to find contact information for Jim and Sweeny. While parked on the road, he saw a black Chevy truck drive past him. Less than five minutes later, Officer Lukawski was alerted to another 911 call by Ebner. Ebner reported that Jim was back at her house, that he had a handgun, and was attempting to break into her house or doing something to her home.[1] Ebner told the 911 operator (who passed the information along to Officer Lukawski) that the man had parked his Chevy truck in her driveway. Ebner stated that she saw the man with a small handgun in his hand as he approached her trailer. Ebner asked that the dispatcher send Officer Lukawski back to her residence quickly. It is apparent from Ebner's voice and words on

---
[1] On the recording, Ebner said the suspect was "bashing her shit in," referring to her home.

the recording that she was worried for her safety. The dispatcher directed Officer Lukawski back to Ebner's residence. The dispatcher also directed Officer Matthew Burns to Ebner's house as backup.

Officer Lukawski responded in less than a minute, arriving the second time at Ebner's residence at 9:31 p.m. Exhibit C-1; Exhibit B, at 9:31:40. Officer Lukawski did not bother to activate the emergency lights on his vehicle (which would have activated his dash camera) because he was such a short distance away and there was no other traffic in the trailer park. When Officer Lukawski arrived, he saw defendant's black Chevy truck parked in Ebner's driveway and recognized it as the same Chevy truck that had driven past him a few minutes before. Officer Lukawski saw no other vehicle matching that description in the area and the vehicle was parked in the driveway as described by Ebner in the 911 call. Officer Lukawski parked his patrol car behind defendant's truck. As Officer Lukawski got out of his patrol car, he saw defendant appear to be getting out of the truck.

Officer Lukawski approached defendant, unsnapping his holster and placing his hand on his weapon, but he did not remove his weapon from its holster. Officer Lukawski told defendant that Officer Lukawski was responding to a gun call and for defendant to keep his hands visible. Defendant, standing next to his truck with the door still open, complied. Officer Lukawski asked defendant what he was doing. Defendant stated he had thrown a snowball at Ebner's trailer to get her attention. Officer Lukawski asked if defendant had any firearms on him, and defendant said he did not. Officer Lukawski moved to get a better view of the inside of defendant's truck through the door that remained open. Officer Lukawski asked defendant if there were any weapons inside the truck. Defendant responded by gently shutting the truck door. Defendant stated the truck did not belong to him and he did not want the officer to look in it. Defendant did not state whether there were weapons in the truck. Officer Lukawski testified that defendant's action in shutting the truck door in response to a question about weapons made Officer Lukawski feel that something was not right.

3

While Officer Lukawski was talking with defendant, Ebner told the 911 operator that Officer Lukawski was speaking to the man she had described as having a handgun.

Officer Lukawski asked defendant to provide identification, and defendant complied by retrieving his wallet from a back pocket. Officer Lukawski instructed defendant to do so slowly. Officer Lukawski "ran" defendant's license and the license plate on the truck, meaning he called the information in to dispatch to see if there were any "wants or warrants" on defendant or any information about the truck, such as a report that it had been stolen. This process took about three to four minutes. At about 9:34:19, the dispatched told Officer Lukawski that defendant was not wanted and provided Officer Lukawski the name of the truck's registered owner. The dispatcher did not indicate there was anything unlawful about defendant's possession of the truck.

Officer Lukawski testified that his conversation with defendant throughout this short exchange had remained calm. Officer Lukawski decided not to conduct a pat down search of defendant, therefore, because he knew he had a backup officer on the way and the situation was currently stable. He testified that he decided to wait to conduct a pat down until the backup officer arrived for officer safety reasons. Officer Lukawski told defendant he had been at the residence earlier regarding a harassment call, but that that call did not involve defendant. Defendant asked if he could leave, but Officer Lukawski told defendant that as soon as his backup officer arrived he would speak with Ms. Ebner and "would get [defendant] on his way."[2]

---

[2] In his brief, defendant overstates Officer Lukawski's conclusion. Defendant wrote: "Officer Lukawski quickly concluded that Mr. Meier was not one of the harassment suspects that were the subject of Ms. Ebner's 911 calls . . . [and] Officer Lukawski told Mr. Meier that he was not the suspect . . . ." Doc. 19-1, at 5 (emphasis added). There were two 911 calls. The first 911 call involved harassment suspects. The second 911 call involved a man with a gun outside Ebner's home, whom she thought was one of the original harassment suspects. That Officer Lukawski was able to determine that Ebner was mistaken and defendant was not one of the harassment suspects did not mean that Officer Lukawski had concluded that defendant was not the suspect of the second 911 call.

Officer Lukawski also testified that he decided not talk to Ms. Ebner (to determine if defendant was the man she saw with a handgun) until the backup officer arrived because, for officer safety reasons, he was not going to walk away from defendant. There was no door or window in the trailer that would have allowed Ebner to see the location where Officer Lukawski and defendant were standing during their interaction. For Ebner to see defendant, she would have had to exit the trailer and come around the corner of the trailer. Officer Lukawski testified that he did not want Ebner to come out of the trailer for her safety.

Officer Burns arrived at the scene within about 90 seconds of Officer Lukawski completing the driver's license and vehicle check. Officer Burns arrived at 9:35:45, a little more than four minutes after Officer Lukawski first made contact with defendant. Upon arriving at the scene, Officer Burns immediately asked Officer Lukawski if he had "pat[ted] him down or anything." Exhibit B, at 9:35:45. Officer Lukawski responded that he had not. Officer Lukawski added that defendant "didn't appear to have anything on him." *Id*., at 9:35:55. At the hearing, Officer Lukawski testified he did not mean that Officer Lukawski had concluded that defendant was not armed. It was dark out and defendant was wearing jeans and a red hoodie-type sweatshirt that was loose fitting. Officer Lukawski testified he could not tell simply by looking at defendant that he was armed. Officer Lukawski testified that he still suspected that defendant might be armed.

Officer Lukawski asked defendant for his driver's license again and indicated that he intended to talk to Ebner. Defendant complied and asked again for permission to leave. Officer Burns then informed defendant that Officer Burns was going to pat down defendant. Defendant's behavior changed immediately. He became agitated and indicated that he was anxious. He claimed he had been beaten by police officers before. Officer Burns attempted to reassure defendant that the officers were not going to beat him, advising defendant that the officer's dash camera was on and the audio was being recorded. Officer Burns again asked defendant to turn around so that the officer could pat him down. Officer Burns asked defendant if he had a weapon and defendant said he

5

had a pocket knife and offered to retrieve it. Officer Burns told defendant to keep his hands out of his pockets and asked if defendant had any other weapons. Defendant did not answer the question. Defendant continued to be agitated and started moving away from the truck and toward a carport. Officer Burns again asked defendant to cooperate and turn around so the officer could pat him down, but defendant did not comply. Officer Burns grabbed defendant by the arm at this point in an effort to turn him around. Defendant resisted, and Officer Burns took defendant to the ground. Defendant landed on the ground, face down, with his hands beneath his body. Defendant refused officers' commands to bring his arms behind his back and resisted their efforts to remove his arms from beneath his body. Officer Burns warned defendant several times that he would deploy a taser if defendant did not cooperate. Eventually, the officers were able to secure defendant's arms and handcuff him behind his back. When the officers helped defendant up, they found a handgun and an electronic scale on the ground where defendant had been laying.

After securing defendant, the officers arrested him for resisting them. The officers searched defendant incident to arrest and removed a substance containing THC, among other items. When officers looked into the truck through the passenger window, they saw a handgun in plain view on the floor in front of the driver's seat. Officers seized the weapon and applied for a search warrant for the truck. When they executed the warrant, officers seized other incriminating evidence from the truck.

I found that both Officer Lukawski and Burns were credible witnesses.

## II.     APPLICABLE STANDARDS

An officer may stop an individual if the officer has reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968); s*ee also United States v. Harris*, 747 F.3d 1013, 1016 (8th Cir. 2014). A Terry stop is justified when a police officer is "able to point to specific and articulable facts which, taken together with

rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21; *see also United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015). In deciding whether to conduct a Terry stop, an officer may rely on information provided by other officers as well as any information known to the team of officers conducting the investigation. *See*, *e.g.*, *United State v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011) (reasonable suspicion may be based on information known not only to the officer at the scene, but also on information known to other law enforcement personnel at the time, even if not communicated to the officer at the scene); *United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005) (same); *United States v. Robinson*, 119 F.3d 663, 666–667 (8th Cir. 1997) (same). Further, an officer may conduct a protective pat down if he has reasonable suspicion that the person "is potentially armed and dangerous." *United States v. Cotton*, 782 F.3d 392, 396 (8th Cir. 2015) (internal quotation marks and citation omitted).

Officers must employ the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the Terry stop. *See Florida v. Royer*, 460 U.S. 491, 500 (1983). A Terry stop may transform into an arrest, requiring probable cause, "if the stop lasts for an unreasonably long time or if officers use unreasonable force." *Id*. As part of a lawful Terry stop, however, officers may take any measures that are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985).

A court must determine whether reasonable suspicion exists based on "the totality of the circumstances, in light of the officer's experience." *United States v. Stigler*, 574 F.3d 1008, 1010 (8th Cir. 2009). What constitutes reasonable suspicion is not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *United States v. Dawdy*, 46 F.3d

1427, 1429 (8th Cir. 1995). In addition, a person's temporal and geographic proximity to a crime scene, combined with a matching description of the suspect, can support a finding of reasonable suspicion. *United States v. Juvenile TK*, 134 F.3d 899, 903–04 (8th Cir. 1998). When evaluating whether reasonable suspicion exists, courts must "view the [officers'] observations as a whole, rather than as discrete and disconnected occurrences." *United States v. Poitier*, 818 F.2d 679, 683 (8th Cir. 1987); *see also United States v. Arvizu*, 534 U.S. 266, 274 (2002) (rejecting court of appeal's reasonable suspicion analysis where the "court's evaluation and rejection of seven of the listed factors in isolation from each other does not take into account the 'totality of the circumstances'").

### III.  ANALYSIS

Defendant claims the officers violated his rights under the Fourth Amendment to the Constitution when they conducted an unlawful Terry stop and patted him down. Specifically, defendant argues: (1) Officer Lukawski violated the Fourth Amendment when, after concluding defendant was not the suspect involved in the first harassment call, he continued to detain defendant because by that point reasonable suspicion had dissipated; and (2) Officer Burns violated the Fourth Amendment when he conducted a pat down of defendant because there was no basis for a reasonable suspicion that defendant was armed. Defendant argues that all evidence discovered afterwards, including the firearms, must be suppressed as fruit of the poisonous tree.

#### A. The Legality of the Continued Terry Stop

I find that that Officer Lukawski conducted a proper Terry stop and his continued detention of defendant until a backup officer arrived was reasonable. Defendant is not disputing that Officer Lukawski acted well within his authority in making initial contact with defendant and requesting defendant's identification and running the plates on the truck. Indeed, I find that there was reasonable suspicion for Officer Lukawski to stop

defendant and detain him to investigate whether he was the man Ebner saw with a firearm outside her trailer. *See United States v. Walker*, 771 F.3d 449, 450 (8th Cir. 2014) (holding that officer had reasonable suspicion to stop defendant when dispatch reported a similar vehicle had been involved in a shooting in the area one minute earlier). Rather, defendant argues that once Officer Lukawski concluded defendant was not one of the people who had been harassing Ebner earlier, and absent learning additional information giving rise to a reasonable suspicion as a result of running defendant's license and the license plate information, Officer Lukawski was legally required to release defendant. I disagree.

It is true that Officer Lukawski concluded at some point during his three to four minute interaction with defendant that defendant was not one of the people who had been harassing Ebner earlier that night. That conclusion, however, is irrelevant for two reasons. First, whether a Terry stop is reasonable under the Fourth Amendment is determined objectively, from the viewpoint of a reasonable officer. An officer's subjective belief is, therefore, irrelevant. It is not what the officer actually believed, but what a reasonable officer with the same experience would reasonably believe, that is the test. *See United States v. Hanlon*, 401 F.3d 926, 929 (8th Cir. 2005) (holding that it is irrelevant whether an officer "actually fear[s]" the suspect is armed as long as "a hypothetical officer in exactly the same circumstances reasonably could believe that the individual is armed and dangerous.").

Second, that Officer Lukawski concluded at some point that defendant was not one of the people who had harassed Ebner earlier is irrelevant because Officer Lukawski had the facts supporting a reasonable suspicion that defendant was involved in criminal conduct and may be armed. Ebner called 911 and reported that a man was outside her trailer and had a handgun, he had parked his Chevy truck in her driveway, and he was attempting to enter or doing something to her trailer. She stated that the man was Jim, one of the people who had been harassing her earlier. She was clearly mistaken.

Officer Lukawski arrived at Ebner's house within a minute of this call. When he arrived, he found defendant getting out of a Chevy truck parked in Ebner's driveway. The truck and its location matched the description given by Ebner. This incident occurred at night when there were no other vehicles or people present; a reasonable officer could conclude that defendant was the suspect Ebner saw with a handgun. Defendant told the officer he had thrown a snowball at Ebner's trailer. A reasonable officer could conclude, therefore, that defendant had been outside his truck prior to the officer arriving, which is consistent with Ebner seeing defendant with a handgun. A reasonable officer could conclude that defendant's action of throwing a snowball at Ebner's trailer was consistent with her report that the man with the gun had done something to her trailer, or as Ebner described it, "bashing her shit in." When Officer Lukawski asked if there were weapons in the truck, defendant did not answer the question; instead, he shut the truck door. A reasonable officer could conclude from defendant's failure to answer the question and suspicious conduct in shutting the door to the truck that a weapon was inside the truck. Defendant was wearing loose clothing such that Officer Lukawski could not determine simply by looking at defendant whether he also was armed.

Therefore, even though Officer Lukawski realized that Ebner was mistaken in believing the man with a gun was the same man who harassed her earlier in the night, that did nothing to mitigate the reasonable suspicion that defendant was the man Ebner saw with a handgun outside her trailer. *See United States v. Watts*, 7 F.3d 122, 126 (8th Cir. 1993) (holding that reasonable suspicion that the defendant may be armed was not dispelled when officers learned that no burglary occurred, as they initially suspected). Officer Lukawski's continued detention of defendant for a short period of time until a pat down search could be conducted was reasonable. Less than five minutes elapsed from the time Officer Lukawski first made contact with defendant and when Officer Burns arrived and began to conduct a pat down of defendant. Approximately 90 seconds elapsed from the time Officer Lukawski received information back from dispatch about defendant's identification and the truck's license plates, and the time when Officer Burns

arrived and began to conduct a pat down of defendant. Nothing during the entire interaction with defendant, other than his self-serving denial that he had a handgun on his person, dissipated the grounds for reasonable suspicion that defendant was the man Ebner saw outside her trailer with a handgun. Officer Lukawski did not violate the Fourth Amendment by detaining defendant for this short period of time to investigate whether he was carrying a firearm. Officer may continue an investigatory stop so long as it is "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. Here, Officer Lukawski did not expand the scope of the stop beyond the purpose of determining if defendant was the armed man Ebner saw outside her trailer.

Defendant argues that Officer Lukawski violated the Fourth Amendment because there were other ways he could have dispelled reasonable suspicion short of conducting a pat down search. Defendant argues, for example, that Officer Lukawski could have spoken with Ebner to determine if defendant was the man she saw with a handgun. Defendant argues that even if it was not feasible for Ebner to step outside her trailer for safety reasons, Officer Lukawski could have spoken to Ebner through dispatch to ask her if she knew defendant (defendant had told Officer Lukawski that Ebner was his cousin). Defendant's argument goes too far. Although officers must use the least intrusive means in relation to the scope and duration of a Terry stop in order to dispel reasonable suspicion, this does not mean that they must think creatively of every possible means of doing so short of conducting a pat down of a potentially armed suspect. Here, Officer Lukawski's decision to wait for a back up officer to arrive before speaking with Ebner was not unreasonable given his suspicion that defendant was potentially armed and dangerous.

### B. *The Legality of the Pat Down*

I find that Officer Burns did not violate the Fourth Amendment when he conducted a pat down search of defendant. Defendant argues that Officer Lukawski's statement to

Officer Burns that defendant "didn't appear to have anything on him" eliminated reasonable suspicion to believe defendant was armed. Doc. 19-1, at 9. Defendant also relies on the fact that Officer Lukawski did not activate the emergency lights on his car, or unholster his weapon, or take other more aggressive or defensive actions, as future proof that Officer Lukawski believed defendant was not armed. Defendant's argument fails for two reasons.

First, again, the officer's subjective beliefs are irrelevant to Fourth Amendment review of his actions. Rather, the reasonableness of his actions is measured not by what he actually believed, but by what a reasonable officer of his experience would believe given the totality of the circumstances. Here, as I previously noted, reasonable suspicion existed that defendant was the armed man Ebner saw outside her trailer. She saw a man who parked a Chevy truck in her drive way. Defendant and his truck matched this description. When Officer Lukawski made contact with defendant, Ebner told the dispatcher that Officer Lukawski was talking to the man about whom Ebner had called 911. Defendant did not answer Officer Lukawski's question about whether there was a firearm in the truck. When defendant shut the truck door, it heightened Officer's Lukawski's suspicion. Although Officer Lukawski did not receive additional information from running defendant's identification and license plate, nothing dissipated the basis for a reasonable officer to believe that defendant was the armed man Ebner had seen outside her trailer.

Second, Officer Lukawski clarified his statement in his testimony at the hearing. He testified that although he did not see anything on defendant that made him looked armed, defendant was wearing loose clothing such that visual inspection did not dispel his reasonable suspicion that defendant was armed. I found Officer Lukawski to be a credible witness. Therefore, Officer Lukawski's statement that defendant did not "appear" to be armed did not mean that Officer Lukawski had concluded defendant was not armed. Therefore, the officers had reasonable suspicion to believe defendant was armed and to conduct a pat down.

## IV. CONCLUSION

In summary, I find that the officers conducted a lawful Terry stop and protective pat down search of defendant. It follows, therefore, that the officers lawfully recovered the evidence they discovered as a result of conducting the stop and pat down search. For those reasons, I respectfully recommend the Court **deny** defendant's motion to suppress (Doc. 19).

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CRIM. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CRIM. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**
**DATED t**his 26th day of October, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa