# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>JONATHAN EDWARD MEIER,<br><br>   Defendant. | No. CR16-3013-LTS<br><br>**ORDER** |

This matter is before me on a Report and Recommendation (R&R) in which the Honorable C.J. Williams, United States Magistrate Judge, recommends that I deny defendant's motion to suppress. *See* Doc. No. 29.

## I. BACKGROUND

### A. *Procedural History*

On March 23, 2016, the grand jury returned an indictment (Doc. No. 1) against defendant Jonathan Edward Meier (Meier) charging him with one count of possession of firearms by a felon in violation of 18 U.S.C. § 922(g)(1). Meier filed a motion to suppress (Doc. No. 19) on September 26, 2016. The Government filed a resistance (Doc. No. 27) on October 12, 2016. Judge Williams held a hearing on October 19, 2016. During that hearing, defendant's exhibits A through D were admitted into evidence, which consisted of a video recording from a patrol car (Exhibit A), two 911 audio recordings (Exhibit B), police reports (Exhibits C-1, C-2, & C-3), and the depositions of Officer J. Lukawski and Matthew Burns (Exhibits D-1 and D-2).

Judge Williams issued his R&R (Doc. No. 29) on October 26, 2016. Meier filed his objections (Doc. No. 35) on November 9, 2016. The Government submitted a response (Doc. No. 38) on November 23, 2016.

### B.     *Relevant Facts*

Judge Williams made the following findings of fact:

> In the late evening of February 14, 2016, Madisen Ebner called 911 asking for an officer to come to her home in a Fort Dodge, Iowa, trailer park. She alleged that a man named Jim was harassing her. She said he was leaving the trailer park on foot and that Jim drove a maroon minivan or SUV. Exhibit A-1. Officer J. Lukawski responded, arriving at the trailer park at approximately 9:15 p.m. Officer Lukawski spoke with Ebner, who further informed him that a woman named Sweeny was with Jim. Ebner showed images of the two captured on her home security camera. Ebner asked Officer Lukawski to contact Jim and Sweeny and ask them not to come to her home anymore.
>
> Officer Lukawski left in his patrol car, stopping a short distance away (still in the trailer park), in order to use his computer in an attempt to find contact information for Jim and Sweeny. While parked on the road, he saw a black Chevy truck drive past him. Less than five minutes later, Officer Lukawski was alerted to another 911 call by Ebner. Ebner reported that Jim was back at her house, that he had a handgun, and was attempting to break into her house or doing something to her home.[1] Ebner told the 911 operator (who passed the information along to Officer Lukawski) that the man had parked his Chevy truck in her driveway. Ebner stated that she saw the man with a small handgun in his hand as he approached her trailer. Ebner asked that the dispatcher send Officer Lukawski back to her residence quickly. It is apparent from Ebner's voice and words on the recording that she was worried for her safety. The dispatcher directed Officer Lukawski back to Ebner's residence. The dispatcher also directed Officer Matthew Burns to Ebner's house as backup.
>
> Officer Lukawski responded in less than a minute, arriving the second time at Ebner's residence at 9:31 p.m. Exhibit C-1; Exhibit B, at

---

[1] On the recording, Ebner said the suspect was "bashing her shit in," referring to her home.

9:31:40. Officer Lukawski did not bother to activate the emergency lights on his vehicle (which would have activated his dash camera) because he was such a short distance away and there was no other traffic in the trailer park. When Officer Lukawski arrived, he saw defendant's black Chevy truck parked in Ebner's driveway and recognized it as the same Chevy truck that had driven past him a few minutes before. Officer Lukawski saw no other vehicle matching that description in the area and the vehicle was parked in the driveway as described by Ebner in the 911 call. Officer Lukawski parked his patrol car behind defendant's truck. As Officer Lukawski got out of his patrol car, he saw defendant appear to be getting out of the truck.

Officer Lukawski approached defendant, unsnapping his holster and placing his hand on his weapon, but he did not remove his weapon from its holster. Officer Lukawski told defendant that Officer Lukawski was responding to a gun call and for defendant to keep his hands visible. Defendant, standing next to his truck with the door still open, complied. Officer Lukawski asked defendant what he was doing. Defendant stated he had thrown a snowball at Ebner's trailer to get her attention. Officer Lukawski asked if defendant had any firearms on him, and defendant said he did not. Officer Lukawski moved to get a better view of the inside of defendant's truck through the door that remained open. Officer Lukawski asked defendant if there were any weapons inside the truck. Defendant responded by gently shutting the truck door. Defendant stated the truck did not belong to him and he did not want the officer to look in it. Defendant did not state whether there were weapons in the truck. Officer Lukawski testified that defendant's action in shutting the truck door in response to a question about weapons made Officer Lukawski feel that something was not right.

While Officer Lukawski was talking with defendant, Ebner told the 911 operator that Officer Lukawski was speaking to the man she had described as having a handgun.

Officer Lukawski asked defendant to provide identification, and defendant complied by retrieving his wallet from a back pocket. Officer Lukawski instructed defendant to do so slowly. Officer Lukawski "ran" defendant's license and the license plate on the truck, meaning he called the information in to dispatch to see if there were any "wants or warrants" on defendant or any information about the truck, such as a report that it had

3

been stolen. This process took about three to four minutes. At about 9:34:19, the dispatche[r] told Officer Lukawski that defendant was not wanted and provided Officer Lukawski the name of the truck's registered owner. The dispatcher did not indicate there was anything unlawful about defendant's possession of the truck.

Officer Lukawski testified that his conversation with defendant throughout this short exchange had remained calm. Officer Lukawski decided not to conduct a pat down search of defendant, therefore, because he knew he had a backup officer on the way and the situation was currently stable. He testified that he decided to wait to conduct a pat down until the backup officer arrived for officer safety reasons. Officer Lukawski told defendant he had been at the residence earlier regarding a harassment call, but that that call did not involve defendant. Defendant asked if he could leave, but Officer Lukawski told defendant that as soon as his backup officer arrived he would speak with Ms. Ebner and "would get [defendant] on his way."[2]

Officer Lukawski also testified that he decided not talk to Ms. Ebner (to determine if defendant was the man she saw with a handgun) until the backup officer arrived because, for officer safety reasons, he was not going to walk away from defendant. There was no door or window in the trailer that would have allowed Ebner to see the location where Officer Lukawski and defendant were standing during their interaction. For Ebner to see defendant, she would have had to exit the trailer and come around the corner of the trailer. Officer Lukawski testified that he did not want Ebner to come out of the trailer for her safety.

Officer Burns arrived at the scene within about 90 seconds of Officer Lukawski completing the driver's license and vehicle check. Officer Burns arrived at 9:35:45, a little more than four minutes after Officer Lukawski

---

[2] In his brief, defendant overstates Officer Lukawski's conclusion. Defendant wrote: "Officer Lukawski quickly concluded that Mr. Meier was not one of the harassment suspects that were the subject of Ms. Ebner's 911 calls . . . [and] Officer Lukawski told Mr. Meier that he was not the suspect . . . ." Doc. 19-1, at 5 (emphasis added). There were two 911 calls. The first 911 call involved harassment suspects. The second 911 call involved a man with a gun outside Ebner's home, whom she thought was one of the original harassment suspects. That Officer Lukawski was able to determine that Ebner was mistaken and defendant was not one of the harassment suspects did not mean that Officer Lukawski had concluded that defendant was not the suspect of the second 911 call.

4

first made contact with defendant. Upon arriving at the scene, Officer Burns immediately asked Officer Lukawski if he had "pat[ted] him down or anything." Exhibit B, at 9:35:45. Officer Lukawski responded that he had not. Officer Lukawski added that defendant "didn't appear to have anything on him." *Id.*, at 9:35:55. At the hearing, Officer Lukawski testified he did not mean that Officer Lukawski had concluded that defendant was not armed. It was dark out and defendant was wearing jeans and a red hoodie-type sweatshirt that was loose fitting. Officer Lukawski testified he could not tell simply by looking at defendant that he was armed. Officer Lukawski testified that he still suspected that defendant might be armed.

Officer Lukawski asked defendant for his driver's license again and indicated that he intended to talk to Ebner. Defendant complied and asked again for permission to leave. Officer Burns then informed defendant that Officer Burns was going to pat down defendant. Defendant's behavior changed immediately. He became agitated and indicated that he was anxious. He claimed he had been beaten by police officers before. Officer Burns attempted to reassure defendant that the officers were not going to beat him, advising defendant that the officer's dash camera was on and the audio was being recorded. Officer Burns again asked defendant to turn around so that the officer could pat him down. Officer Burns asked defendant if he had a weapon and defendant said he had a pocket knife and offered to retrieve it. Officer Burns told defendant to keep his hands out of his pockets and asked if defendant had any other weapons. Defendant did not answer the question. Defendant continued to be agitated and started moving away from the truck and toward a carport. Officer Burns again asked defendant to cooperate and turn around so the officer could pat him down, but defendant did not comply. Officer Burns grabbed defendant by the arm at this point in an effort to turn him around. Defendant resisted, and Officer Burns took defendant to the ground. Defendant landed on the ground, face down, with his hands beneath his body. Defendant refused officers' commands to bring his arms behind his back and resisted their efforts to remove his arms from beneath his body. Officer Burns warned defendant several times that he would deploy a taser if defendant did not cooperate. Eventually, the officers were able to secure defendant's arms and handcuff him behind his back. When the officers helped defendant up, they found a handgun and an electronic scale on the ground where defendant had been laying.

>After securing defendant, the officers arrested him for resisting them. The officers searched defendant incident to arrest and removed a substance containing THC, among other items. When officers looked into the truck through the passenger window, they saw a handgun in plain view on the floor in front of the driver's seat. Officers seized the weapon and applied for a search warrant for the truck. When they executed the warrant, officers seized other incriminating evidence from the truck.

Doc. No. 29 at 2-6 (footnotes in original). Judge Williams also found both officers were credible witnesses. *Id.* at 6.

Meier has nine objections to the factual findings in the R&R. These objections all reflect Meier's alternative view of the evidence, which he summarizes as follows:

(1) upon arrival outside Ebner's trailer, Lukawski lawfully detained Meier, asked him questions and gathered information;
(2) after gathering that information, Lukawski concluded that Meier was not an armed harassment suspected named "Jim;"
(3) Lukawski did not otherwise suspect that Meier was armed;
(4) because of that, Lukawski opted not to conduct a pat-down search and
(5) despite that, Lukawski and later Burns continued detaining Meier until subjecting him to an attempted pat-down search.

Doc. No. 35 at 6-7.

Meier first objects to the introductory statement in the R&R that the charge arose from an incident on February 12, 2016. *See* Doc. No 29 at 1. Meier points out the correct date of the incident is February 14, 2016. The Government agrees. Doc. No. 38 at 1. The R&R's findings of fact correctly note the incident occurred on February 14, 2016. Doc. No. 29 at 2. Nonetheless, this objection is sustained.

Second, Meier objects to another statement in the introduction, which is that "officers discovered one gun on defendant and another in the truck he was driving." *Id.* at 1. Meier argues the gun was never found on him, but on the ground near him after a struggle. The Government argues it is reasonable to infer from these facts that the gun had been on defendant's person and fell out during the struggle. Doc. No. 38 at 2.

6

Indeed, the findings of fact more precisely explain that "[w]hen the officers helped defendant up, they found a handgun and an electronic scale on the ground where defendant had been laying." Doc. No. 29 at 6. This objection is overruled.

Third, Meier objects to the statement that "Officer Lukawski did not bother to activate the emergency lights on his vehicle (which would have activated his dash camera) because he was such a short distance away and there was no other traffic in the trailer park." *Id.* at 3. Meier acknowledges this finding is based on Lukawski's testimony at the suppression hearing. He argues the statement is self-serving and "potentially not credible" because it is "puzzling that Officer Lukawski failed to activate his dash camera while responding to a gun call – either by turning on his emergency lights or manually activating the camera, as he could have done." Doc. No. 35 at 2. Meier cites to Lukawski's deposition testimony in a related state court case in which Lukawski testified that he eventually did turn on the camera manually. Doc. No. 19-7 at 4. As noted above, Judge Williams found Lukawski credible and I have no reason to disagree with that assessment based on the deposition testimony cited by Meier. This testimony only indicates that Lukawski *could* have turned on his camera at the time he responded, even though he did not. In that same deposition, Lukawski testified that "being it was a gun call, I was kind of in a hurry." *Id.* Defendant has cited no other evidence indicating there was some other reason or improper motive that Lukawski had in not turning on the camera immediately. This objection is overruled.

Meier's fourth objection concerns another aspect of Lukawski's suppression hearing testimony. The R&R noted Lukawski testified that "defendant's action in shutting the truck door in response to a question about weapons made Officer Lukawski feel that something was not right." Doc. No. 29 at 3. Meier argues Lukawski's testimony is not credible for two reasons. First, Lukawski did not state in his report or deposition that Meier's conduct made him feel that "something was not right." Second, he argues that this statement is inconsistent with his other testimony that he and Meier

7

had a "calm conversation," that Meier had identified himself as Ebner's cousin and that he concluded Meier was not "Jim," the harassment suspect. In addition, Meier argues Lukawski did not make a distress call over the radio or draw his weapon. Meier also argues it was objectively unreasonable for Lukawski to conclude that Meier's shutting the door meant that there may have been weapons in the vehicle. Meier notes that he truthfully told Lukawski that the pickup was not his and it was reasonable for him to deny consent to search for that reason.

I find that none of these arguments demonstrate that Lukawski's testimony was not credible. Just because Lukawski did not mention his suspicions in his report or deposition, does not mean they did not exist. There is also nothing inconsistent about Lukawski's suspicions and the otherwise calm nature of his interaction with Meier. It was also reasonable for Lukawski to find Meier's conduct in closing the truck door suspicious. Lukawski testified it was suspicious because Meier closed it in response to a question about weapons, not in response to a question of who owned the truck. Finally, as the Government notes, this action by Meier only formed part of Lukawski's reasonable suspicion that Meier may have been armed. Other factors included the matching vehicle description and Meier's loose-fitting clothing. The fourth objection is overruled.

Meier next objects to the R&R finding that "Lukawski decided not to conduct a pat down search of defendant . . . because he knew he had a backup officer on the way and the situation was currently stable. He testified that he decided to wait to conduct a pat down until the backup officer arrived for officer safety reasons." *Id.* at 4. Meier argues Lukawski's testimony on this point should be discounted based on Lukawski's interaction with Officer Burns upon his arrival at the scene. Specifically, Meier references the following exchange, which can be heard on defendant's Exhibit B:

Lukawski: Could you keep an eye on him for just a second?

Burns: Did you pat him down or anything?

| | | |
|---|---|---|
| Lukawski: | I did not. | |
| Burns: | Okay. | |
| Lukawski: | He doesn't appear to have anything on him. He won't let me look through the truck (unintelligible). I ran his DL and everything already (unintelligible). | |
| Burns: | Was there . . . . ? | |
| Lukawski: | I just want to go talk to these people. | |

*See* Doc. No. 35 at 4. Meier argues that had Lukawski actually suspected that Meier was armed, he could have easily conducted the pat-down search on his own without waiting for backup. He contends Lukawski's testimony that he was waiting for backup is a post-hoc explanation. Lukawski explained during the hearing that he did not conduct a pat-down search because things were calm and he knew Officer Burns was only a few minutes away. He specifically stated, "I thought there was no sense in having this situation potentially get escalated by myself when my back-up was only another minute or two away." Doc. No. 33 at 20.

    I find that Lukawski's subjective reasons for failing to pat down Meier are not material to the issue of whether the pat-down search by Burns was reasonable. As the Government notes, Lukawski's subjective beliefs are immaterial to the analysis, which is objective. *See United States v. Hanlon*, 401 F.3d 926, 929 (8th Cir. 2005) (noting the relevant inquiry is whether "a hypothetical officer in exactly the same circumstances reasonably could believe that the individual is armed and dangerous."). Burns did not ask Lukawski *why* he had not patted Meier down. He only asked whether Meier had been patted down. Lukawski's comment that "he doesn't appear to have anything on him" could reasonably be interpreted by Burns that there was no visible firearm present, but one could still be concealed. Because Lukawski's actions and statements in the dash

9

cam video are not inconsistent with his testimony at the suppression hearing or otherwise demonstrate that his testimony is not credible, this objection is overruled.

Meier's sixth factual objection is to the finding that "[i]n his brief, defendant overstates Officer Lukawski's conclusion" that "Mr. Meier was not one of the harassment suspects that were the subject of Ms. Ebner's 911 calls." Doc. No. 29 at 4, n.2. Similarly, Meier objects to this finding: "that Officer Lukawski was able to determine that Ebner was mistaken and defendant was not one of the harassment suspects does not mean that Officer Lukawski had concluded that defendant was not the suspect of the second 911 call." *Id.* Meier argues the evidence demonstrates that "Jim" was the subject of both 911 calls and Lukawski concluded that Meier was not "Jim." After the second 911 call, the dispatcher told Lukawski that "the male" was back with a gun. Based on his first interaction with Ebner, Lukawski knew the male that had been harassing Ebner was named "Jim." When he responded to the second 911 call, Lukawski learned the suspect's name was Jonathan Meier. Lukawski told Meier that he had just been there for a harassment call, "but it wasn't for him." Doc. No. 19-4 at 1. Meier suggests the mistaken identity was enough for Lukawski to drop any further investigation with regard to the second call. I disagree. Regardless of Ebner's mistaken communication that "Jim" was back with a gun, there was still a male subject outside of Ebner's residence, who had exited a vehicle matching the description provided by Ebner. It is fair to say that Meier was the "subject" of the second 911 call even though he was not the harassment suspect from the first call. This objection is overruled.

Next, Meier objects to the finding that Lukawski "decided not [to talk] to Ms. Ebner . . . until the backup officer arrived because, for officer safety reasons, he was not going to walk away from defendant." Doc. No. 29 at 5. Meier again argues that this is a post-hoc explanation that is inconsistent with Lukawski's actions. He argues that Lukawski's failure to conduct a pat-down search demonstrates he had no concern about officer safety and no reasonable suspicion that Meier was an armed suspect. As noted

above, I find nothing inconsistent about Lukawski's actions and his testimony. Indeed, Burns corroborates Lukawski's explanation by testifying that a gun call is a "two-man call." Doc. No. 33 at 54. Lukawski also wrote in his report that he advised Meier once his backup showed up, he would speak to Ebner and get him on his way. Doc. No. 19-4 at 1. Meier does not offer an alternative explanation for why Lukawski would have waited for his backup if not for officer safety. He simply argues that there was no concern of officer safety. Meier's argument fails to demonstrate that Lukawski's testimony on this point is not credible. This objection is overruled.

Meier's eighth objection goes back to Lukawski's suspicions that Meier was armed. The R&R states that Lukawski told Burns that Meier "didn't appear to have anything on him." Doc. No. 29 at 5. Meier argues this is inconsistent with the R&R finding that "Officer Lukawski testified that he did not mean that [he] had concluded that defendant was not armed" and "Officer Lukawski testified that he still suspected that defendant might be armed." *Id.* Meier also argues these findings are inconsistent with Lukawski's actions in having a calm conversation with Meier and failing to conduct a pat-down search. For the reasons explained above, I fail to see the inconsistency. Moreover, Lukawski's subjective thoughts are irrelevant and have no impact on the analysis of whether it was reasonable for him to continue to detain Meier until Burns arrived and whether it was reasonable for Burns to conduct a pat-down search based on the totality of the circumstances at the time he arrived. This objection is overruled.

Finally, Meier objects to the R&R finding that "both Officer[s] Lukawski and Burns were credible witnesses." Doc. No. 29 at 6. Meier offers no reasons for why Burns' testimony was not credible. As to Lukawski, he contends his testimony was inconsistent with his actions on the date of Meier's arrest. As discussed above, I find no reason to disagree with Judge Williams' finding on the credibility of the officers. Other factors (such as the arrival of the backup officer) provide context for Lukawski's actions that night, which are consistent with his testimony. This objection is overruled.

## II. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III. DISCUSSION

Meier's motion and objections focus on (A) whether Lukawski's continued detention of Meier was supported by reasonable suspicion after Lukawski had determined Meier was not "Jim," the harassment suspect and (B) whether the officers had reasonable suspicion to believe that Meier was armed to justify the pat-down search. Each of these will be discussed in turn.

### A. *Did Lukawski Have Reasonable Suspicion to Continue Detaining Meier After Concluding He Was Not "Jim"?*

Meier objects to Judge Williams' conclusion that Lukawski's "continued detention of defendant until a backup officer arrived was reasonable." Doc. No. 29 at 8. Meier argues that once Lukawski had determined Meier was not "Jim" and concluded he was not armed he was obligated to release Meier. Any further detention constituted an unlawful fishing expedition.

In concluding the continued detention was reasonable, Judge Williams found it was irrelevant that Lukawski had concluded Meier was not one of the people who had been harassing Ebner earlier that night because "whether a *Terry* stop is reasonable under the Fourth Amendment is determined objectively, from the viewpoint of a reasonable officer." *Id.* at 9. Judge Williams concluded that Lukawski "had the facts supporting a reasonable suspicion that defendant was involved in criminal activity" and may have been armed.

Under *Terry v. Ohio*, officers are "permitted to conduct 'investigative stops' when they have 'reasonable, articulable suspicion that criminal activity may be afoot." *United States v. Watts*, 7 F.3d 122, 125 (8th Cir. 1993). "Courts are required to apply an objective test to resolve the question whether reasonable, articulable suspicion justified a protective search." *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002). Under the objective test, the "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be

warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Maltais*, 403 F.3d 550, 554 (8th Cir. 2005) (quoting *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994)).

"During an investigative stop, officers should employ the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the temporary seizure." *Maltais*, 403 F.3d at 556 (internal quotations omitted). "The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry*, 392 U.S. at 19. The duration of the detention is reasonable as long as it does not go "beyond the amount of time otherwise justified by the purpose of the stop" and is supported by reasonable suspicion. *United States v. Donnelly*, 475 F.3d 946, 951-52 (8th Cir. 2007). During the stop, officers may take additional steps that are "reasonably necessary to protect their personal safety." *United States v. Hensley*, 469 U.S. 221, 235 (1985).

Meier argues the fact that he was not "Jim" and that he was not violating any laws should have ended the investigation and detention by Lukawski. Moreover, he contends that any reasonable suspicion was dispelled when Meier identified himself as Ebner's cousin or could have easily been dispelled by confirming this with Ebner. These arguments would hold weight if the second 911 call was simply a complaint that "Jim" was back at Ebner's residence. Instead, the second 911 call was that "Jim" was back at the residence *and* he had a gun. While the first concern was resolved by Meier's identification, the second was not. At that point, the purpose of the stop was to determine whether Meier was in possession of a firearm.

It was reasonable for Lukawski to continue investigating until he verified whether Meier was the individual with the firearm. Ebner had reported to dispatch and dispatch

reported to Lukawski that the male with the gun was sitting in a Chevy truck parked in Ebner's driveway. When Lukawski arrived at Ebner's residence (within approximately 30 seconds after receiving the call), he saw Meier get out of a Chevy truck. Moreover, when Lukawski asked if there were any guns in the truck, Meier responded by shutting the door of the truck and stating it was not his truck and did not want the officer looking in it. In addition, Ebner reported to dispatch that "they are outside talking right now" suggesting that Luakwski had identified the correct suspect.[3] All of these circumstances taken together were enough to generate reasonable suspicion that Meier may have been armed or had a firearm in his vehicle that justified further investigation.

With regard to the reasonableness of the continued detention, Lukawski testified, and the facts support, that a firearm investigation or "gun call" required the presence of two officers for officer safety. Therefore, it was reasonable for Lukawski to wait for Burns before continuing his investigation. During this time, Lukawski ran Meier's information and asked Meier questions. The evidence shows Burns arrived approximately four minutes after Lukawski and approximately 90 seconds after Lukawski had dispatch run Meier's and the vehicle's information. The continued detention was minimal and reasonable under the circumstances.

Finally, Meier argues Lukawski did not use the least intrusive means to confirm or dispel any reasonable suspicion. He contends Lukawski could have asked the dispatcher to contact Ebner to determine whether she knew Meier and whether she was worried about him being outside her trailer. The Government points out that Ebner had essentially verified that Meier was the person she was concerned about when she told the dispatcher that "they are outside talking right now." Def. Ex. A-2. Moreover, the Government argues that whether Ebner knew Meier or was worried about him being

---

[3] Even though Lukawski was not aware of this, reasonable suspicion may be based on the collective knowledge of those involved in the investigation. *See United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011).

15

outside her trailer are not relevant facts to the issue of whether Meier was concealing a firearm. I agree. While there are other conceivable actions Lukawski could have taken to investigate whether Meier was concealing a weapon, he had already run through many of the lesser intrusive ones, which had not confirmed or dispelled his suspicions. Indeed, a pat-down search upon Burns' arrival appeared to be the most efficient and least intrusive means of investigation given that nothing else had confirmed or dispelled their suspicions that Meier was the subject Ebner had witnessed with the handgun.

Based on the totality of the circumstances, I find that Lukawski had reasonable suspicion to continue investigating Meier despite his conclusion that Meier was not "Jim." Moreover, the continued detention after verifying Meier's identity was reasonable because Burns was only a short distance away and the presence of two officers was preferred in response to gun calls for officer safety. Finally, the officers' actions were strictly tied to the purpose of their investigation – to determine whether Meier was in possession of a firearm – and employed the least intrusive means necessary to confirm or dispel their suspicions that Meier was armed.

### B. *Did The Officers Have Reasonable Suspicion to Believe That Meier Was Armed and Dangerous to Justify the Attempted Pat-Down Search?*

Meier argues the pat-down search was unlawful because Lukawski had already determined Meier was not armed by the time Burns arrived. This is based on Lukawski's statement to Burns upon his arrival at the scene that Meier didn't "appear to have anything on him." Lukawski testified at the suppression hearing that this did not mean he had concluded Meier was unarmed. Doc. No. 33 at 24. Meier argues these positions are inconsistent and therefore, Lukawski's testimony is not credible. As discussed above, I find no reason to discredit Lukawski's testimony on this basis.

The Government argues that Lukawski's subjective thoughts are irrelevant to the objective inquiry which is whether "a hypothetical officer in exactly the same

16

circumstances reasonably could believe that the individual is armed and dangerous." *Hanlon*, 401 F.3d at 929. It contends that a hypothetical officer could easily believe Meier was armed based on the 911 call less than 30 seconds earlier reporting a man with a gun at that location, the matching vehicle description, Meier's suspicious actions and Ebner's confirmation to the dispatcher that the officer was speaking to the subject she had complained about.

Law enforcement officers are justified in making a "limited, warrantless search for the protection of [themselves] or others nearby in order to discover weapons if [they have] a reasonable, articulable suspicion that the person may be armed and presently dangerous." *Roggeman*, 279 F.3d at 577 (citing *Terry*, 392 U.S. at 30). "Courts are required to apply an objective test to resolve the question whether reasonable, articulable suspicion justified a protective search." *Id.* "Under this objective standard, the 'officer need not be absolutely certain that the individual is armed, the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* (citing *Terry*, 392 U.S. at 27). Reasonable suspicion "is considerably less than proof of wrongdoing by a preponderance of the evidence" and "is obviously less demanding than that for probable cause." *Id.* (citing *United States v. Solkolow*, 490 U.S. 1, 7 (1989)). "In determining whether reasonable suspicion exists, [the court] must consider the totality of the circumstances in light of the officers' experience and specialized training." *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012).

Here, Burns was the officer who actually performed the attempted protective search or pat-down. Therefore, I must consider what a reasonable officer in Burns' position would have inferred from the facts and circumstances of the encounter. *See Roggeman*, 279 F.3d at 580, n.5 ("[w]hen conducting our objective, reasonable-suspicion analysis, we are required to put ourselves, as best we can, into the shoes of the officer

17

who actually performed the protective search."). Meier's argument focuses solely on Lukawski and fails to address any reasonable suspicion Burns may have had.

Burns testified that dispatch advised him to respond to a gun call around 9:30 p.m. Doc. No. 33 at 53. He knew that Lukawski was at the scene and testified that "a man with a gun call's obviously a two man call." *Id.* at 54. Burns arrived within three or four minutes. *Id.* at 55. While he was traveling, he heard Lukawski report over the radio that there was a man in the driveway and that dispatch had run his driver's license and license plate. *Id.* at 56. When Burns arrived, he saw Lukawski speaking with a male individual in the driveway by a pickup truck. He asked Lukawski if he had patted the subject down and learned that he had not. *Id.* at 57. He could not recall whether Lukawski told him it appeared that Meier did not have anything on him, but Burns testified that he would have wanted to pat him down anyway given that, in his experience, it is not always obvious from the outside if someone is concealing something. *Id.* at 58. Indeed, Burns could not tell by looking at Meier whether he was armed. *Id.* Once Burns told Meier that he was going to pat him down, Meier immediately became elusive and started backing away and acting jittery. *Id.* at 59. Meier explained that he had been assaulted by police officers before, and Burns assured him that that was not going to happen and that the camera in his squad car and audio were on. *Id.* As soon as Burns started patting Meier down, Meier failed to comply and eventually attempted to get away from Burns such that Burns had to physically restrain him on the ground. *Id.* at 61-62. With assistance from Lukawski, they handcuffed Meier and observed a digital scale and a revolver on the ground when they brought Meier to his feet. *Id.* at 62-63.

Based on the totality of the circumstances, I find that Burns had reasonable suspicion to believe that Meier was armed to justify the pat-down search. Burns was responding to a gun call. When he arrived at the scene, the suspect had not yet been patted down and was wearing clothes that could conceal a firearm. There were no other circumstances to suggest that the caller was mistaken in seeing a firearm or that Meier

18

was not the person she saw with the firearm.[4] For these reasons, Burns had the requisite reasonable suspicion to justify the pat-down search.

## IV. CONCLUSION

For the reasons set forth herein, defendant's objections (Doc. No. 35) are **overruled**. I hereby **accept** Judge Williams' report and recommendation (Doc. No. 29) without modification. Defendant's motion to suppress (Doc. No. 19) is **denied**.

**IT IS SO ORDERED.**

**DATED** this 30th day of November, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE

---

[4] While Lukawski was aware that Meier was not "Jim," Burns had none of this context. Doc. No. 33 at 67-68.